UNITED STATES v. The MERRIMAC. See Case No. 9,476.

## Case No. 15,759a.

### UNITED STATES v. MERRYMAN.

[2 Hayw. & H. 337.] [1]

Circuit Court, District of Columbia.   Feb. 8, 1860.

CONSTABLE—MISCONDUCT—REMOVAL FROM OFFICE.

A constable who uses a criminal process behind which to enter forcibly a man's premises, ostensibly to serve a civil warrant for debt, and for the purpose of taking unlawful possession

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

of property held lawfully as a pledge for a debt, prostitutes the law to the basest purposes, and will be dismissed from office.

At law.

Mr. Ould, U. S. Dist. Atty.
Mr. Stone, for defendant.

It appeared in evidence that Joseph Sweggert sent a cart to a colored man named Rogers to be mended. When complete Sweggert called on Rogers and informed him that he could not use the cart for some time, and Rogers told him to take it away, which he did, and placed it on an open lot immediately in rear of Rogers' shop. The repairs on the cart came to $17, and Sweggert paid $10 in cash on it and $5.32 in lumber, which lumber was afterwards refused as part payment. Sweggert then went up the country to do some hauling, and when he got back to Georgetown by the canal he sent his sons to Rogers for the cart to take his baggage home in. Rogers would not give it up, alleging it was not paid for, and took the screws (nuts) from the axle so that they could not take it away. When Sweggert got home he tried to get the cart and settle up with Rogers, but Rogers had placed it inside his shop and locked the doors. As a last resort Sweggert concluded to warrant Rogers for the money he had paid him on account, and thereby compel him to a settlement.

The warrant was directed to [Horatio H.] Merryman, who proceeded to the shop, and could not effect an entrance. He and Sweggert then consulted together, and Sweggert informed Merryman that Rogers had taken the screws (nuts) from the cart. Merryman instantly decided that that was a felony; that Rogers was guilty of stealing, and that he would now fix him by obtaining a search warrant. So he and Sweggert went together, and Sweggert made oath to the search warrant, which was duly issued, and armed with this criminal process, Merryman proceeded to Rogers' shop, broke it open, entered and took the cart off with him. In so doing however he did not as required by the warrant "return the body" of Rogers, nor make any attempt to arrest him, either then or afterwards, though according to the oath of Sweggert, Rogers was a felon, having as alleged stolen the cart. It was simply using a criminal process, behind which to enter forcibly a man's premises, ostensibly to serve a civil warrant for debt, but in reality for the purpose of taking unlawful possession of a piece of property which Rogers held lawfully as pledge for a debt.

THE COURT, after hearing all the evidence in the case, remarked that such a proceeding on the part of the defendant was a high-handed wrong, and tended to prostitute the law to the basest purposes. It was taking a mean advantage, in order to oppress the poor, and thus to collect debts which could not perhaps be made by any other process. It seems that the defendant after charging Rogers with a high crime, had abandoned entirely that portion of his case, when he recovered the cart, showing the object to have been, not to bring a wrongdoer to justice, but to obtain a contemptible advantage over a fellow man. Such a course was wrong and oppressive, and would be put down by the court whenever brought to its notice.

The clerk was then ordered to dismiss the defendant from the office of county constable, and take away his commission.